**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| SLYDE ANALYTICS LLC, | ) | Case No. 2:26-cv-00416 |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| POLAR ELECTRO OY, | ) | |
| Defendant. | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Slyde Analytics LLC ("Slyde" or "Plaintiff") for its Complaint against Defendant

Polar Electro Oy ("Polar" or "Defendant") for patent infringement alleges as follows:

**THE PARTIES**

1. Slyde is a limited liability company, organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Suite 170, Marshall, Texas 75670. Slyde is the owner and licensor of established intellectual property in the smart watch and fitness tracking space. Slyde is the sole U.S. distributor for Myotest SA's fitness tracking software, which is covered by its patents and captures, analyzes, and improves biomechanical metrics on smart watches and other devices. Further, Slyde marketed the Myotest SA fitness tracking software and reached out to several companies throughout Texas, including within this District. In furtherance of its licensing efforts in Texas, Slyde has developed demonstration applications with the Myotest SA fitness tracking software.

2. Defendant Polar Electro Oy is a company organized and existing under the laws of Finland, with its principal place of business located at Professorintie 5, Kempele, Finland, 90440.

On information and belief, Polar may be served via an officer or director at the address above through the Hague Convention.

3.      Defendant designs, manufactures, makes, uses, sells, and/or imports into the United States watches with electronic display and fitness tracking capabilities.

4.      Defendant's watches and fitness tracking devices are marketed, used, offered for sale, and/or sold throughout the United States, including within this District.

5.      For example, Defendant has directly demonstrated and marketed its products, including the Accused Products (defined below), at trade shows in the United States, such as CES 2025 in Las Vegas, Nevada.

**Live Demonstrations** – Get inspired by real-world innovations from our leading partners, including Polar Electro Oy, Landis+Gyr, Groupe SEB, UEI, NXP Semiconductors, STMicroelectronics, Qualcomm, ActiveLook, Sensus, and more. [1]

6.      On information and belief, Defendant's employees regularly travel to the United States to test, develop, demonstrate, market, sell, and offer for sale the Accused Products. This includes trade shows, such as CES 2025.

---

[1] https://www.microej.com/event/join-microej-at-ces-2025-in-las-vegas/.



7.    For example, as shown above, at least Spiros Andreou, Defendant's Head of Global Industry & Technology Partnerships, and Tuomas Ylä-Kauttu, Defendant's Head of Global Business Development, attended CES 2025 to demonstrate and market the Accused Products. Both employees work directly for Defendant and are based out of Finland.[2]

8.    Defendant has also attended at least CES dating back to 2023 to demonstrate, market, offer for sale, and sell the Accused Products.

---

[2] https://www.linkedin.com/in/andreouspiros/; https://www.linkedin.com/in/tuomasylakauttu/



## JURISDICTION

9.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

10.      This Court has personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.  Upon information and belief, Defendant has sufficient minimum contacts with the forum because Defendant transacts substantial business in the State of Texas and in this Judicial District. Further, Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, alleged more particularly below. Furthermore, Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in this District; Defendant has sought protection and benefit from the laws of the State of Texas; and

---

[3]      https://www.microej.com/news/ces-2023-microej-software-defined-innovations-in-all-iot-verticals/

Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Texas and in this District.

11.     Defendant is subject to this Court's specific and general personal jurisdiction due at least to their substantial business in this forum, including (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

12.     Specifically, Defendant intends to do and does business in, and has committed acts of infringement in this District, in the State of Texas, and in the United States, directly, through intermediaries, and offers and sends its products or services, including those accused of infringement here, to customers and potential customers located in this State, including in this District, and in the United States. *See* https://www.polar.com/welcome/ (stating Polar Electro is available in several countries, including the United States).

13.     Pursuant to the "Privacy Notice," Defendant owns and operates and all affiliated websites, including all subdomains, subdirectories, mobile sites, and mobile applications. *See* https://www.polar.com/en/legal/privacy-notice (stating that "'Polar' refers to Polar Electro Oy and its subsidiaries" and that "Polar's website" allows consumers "to buy Polar's products via the links provided on the Polar.com website.") (Privacy Notice last updated January 14, 2026). For contact information, the Data Controller and Data Protection Officer's addresses are listed as Polar Electro Oy, Professorintie 5, 90440 Kempele, Finland.

14.     On information and belief, Defendant also owns the website polar.com. *See* polar.com, WHOIS, https://www.whois.com/whois/polar.com (last updated March 22, 2026); *see also* https://lookup.icann.org/en/lookup (results for www.polar.com).

15.     On information and belief, Defendant also makes its products available for sale in this District through third-party sellers, such as Walmart, Amazon, and REI.





---

[4] https://www.walmart.com/brand/polar/10012860

[5]                  https://www.amazon.com/stores/Polar/page/59FD6DB7-9D08-499E-9924-11EDFB5F6CAC?lp_asin=B0DJGS6875&ref_=ast_bln&store_ref=bl_ast_dp_brandLogo_sto



16.    Defendant has committed acts of infringement in this District, including, but not limited to, making, using, selling, offering for sale, and importing of the Accused Products.

17.    Defendant has purposefully directed infringing activities to residents of the State of Texas, and this litigation results from those infringing activities.  Defendant regularly sells (either directly or indirectly), its products within this District. For example, Defendant has placed infringing products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being sold in this Judicial District and the State of Texas.  Defendant is subject to this Court's specific and/or general jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and Judicial District, including its infringing activities alleged herein, from which Defendant has derived substantial revenue from goods sold to Texas residents and consumers.

---

[6] https://www.rei.com/b/polar/c/fitness-trackers?r=c%3Bshipping%3AShip+to+Address%3Bb&ir=category%3Afitness-trackers

18.     Venue is proper against the Defendant in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule).

**PATENTS-IN-SUIT**

19.     On October 31, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,804,678 (the "'678 Patent") entitled "Method and Circuit for Switching a Wristwatch from a First Power Mode to a Second Power Mode". A true and correct copy of the '678 Patent is available at: https://patentimages.storage.googleapis.com/66/75/da/3c1794bd793023/US9804678.pdf.

20.     On February 5, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,198,085 (the "'085 Patent") entitled "Method and Circuit for Switching a Wristwatch from a First Power Mode to a Second Power Mode". A true and correct copy of the '085 Patent is available at: https://patentimages.storage.googleapis.com/2f/74/71/1b183d01f4d6c0/US10198085.pdf.

21.     On May 16, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,651,922 (the "'922 Patent") entitled "Wristwatch with a Touch Screen and Method for Displaying on a Touch-Screen Watch". A true and correct copy of the '922 Patent is available at: https://patentimages.storage.googleapis.com/46/41/aa/e6cf42c43ea6fd/US9651922.pdf.

22.     On January 23, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,873,018 (the "'018 Patent") entitled "Integrated Portable Device

and Method Implementing an Accelerometer for Analyzing Biomechanical Parameters of a Stride". A true and correct copy of the '018 Patent is available at: https://patentimages.storage.googleapis.com/8e/51/b7/79c6a81c80a7e0/US9873018.pdf.

23.    On January 3, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,536,134 (the "'134 Patent") entitled "Athletic Performance Monitoring Device". A true and correct copy of the '134 Patent is available at: https://patentimages.storage.googleapis.com/ae/cb/1e/a8c70047a23863/US9536134.pdf.

24.    Slyde is the sole and exclusive owner of all right, title, and interest in the '678 Patent, the '085 Patent, the '922 Patent, the '018 Patent, and the '134 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Slyde also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

25.    Defendant specifically induces infringement of the Patents-in-Suit by making available on its website and at other locations, User Manuals and other instructional materials on how to operate the Accused Products in an infringing manner. *See, e.g.,* https://support.polar.com/en/manual/; https://www.polar.com/en/guides; https://support.polar.com/e_manuals/ignite-2/polar-ignite-2-user-manual-english/manual.pdf; https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/manual.pdf; https://support.polar.com/e_manuals/pacer-pro/polar-pacer-pro-user-manual-english/manual.pdf.

26.    Defendant induces infringement with knowledge of at least the '018 Patent and the '134 Patent. On information and belief, Myotest SA, the previous assignee of the '018 Patent and

9

the '134 Patent, entered into business and intellectual property licensing discussions with Polar in or about 2015. On information and belief, the discussions included disclosure of the '018 Patent and the '134 Patent and/or their applications, among other patents, patent applications and intellectual property assets held by Myotest SA. Accordingly, Polar had knowledge of the '018 Patent and/or its application since at least the filing of its application in 2016 and knowledge of the '134 Patent and/or its application since holding discussions with Myotest SA in or about at least 2015.

### FACTUAL ALLEGATIONS

27. The Patents-in-Suit generally relate to methods and apparatuses related to wristwatches with a digital display, wearables, and smartphones.

28. The '922 Patent generally relates to technology involving a wristwatch with a digital matrix display, a sheet of touch-sensitive glass, and a processing circuit for interpreting signals from the touch-sensitive glass in order to make changes to what is displayed on the digital matrix display. The technology described in the '922 Patent was developed by famed watch designers Pascal Pozzo Di Borgo and Jörg Hysek[7]. For example, the technology accused herein is implemented by infringing smartwatches with an electronic display allowing for the display of scrolling and replaceable face cards, including, but not limited to, several watches in the Grit X

---

[7] Jörg Hysek is a prominent figure in the international watchmaking community, both for high-end fitness watches and high-end mechanical watches. *See, e.g.,* https://www.thenakedwatchmaker.com/people-jorg-hysek; https://www.crownandcaliber.com/posts/jorg-hysek-watch-designs/; https://www.everestbands.com/blogs/bezel-barrel/watch-designer-spotlight-jorg-hysek?srsltid=AfmBOortAsZWizRfibp2FIEgYixO9y0LLi792X1IBwCud7tQN6jZLZ0o. Jörg Hysek's designs include the original Vacheron Constantion 222, which served as the precursor to the Vacheron Constantin Overseas, one of the most iconic sports watches in the world from one of the oldest, if not the oldest, watch brands still in operation. *See* https://www.crownandcaliber.com/posts/jorg-hysek-watch-designs/

Series (e.g., Grit X2 Pro, GritX2 Pro Titan, Grit X2, Grit X Pro, and all previous versions and iterations), Vantage Series (e.g., Vantage V3, Vantage M3, and previous versions and iterations), Pacer Series (e.g., Pacer Pro, Pacer, and all previous versions and iterations), Ignite Series (e.g., Ignite 3 Titanium, Ignite 3, Ignite 2, and all previous versions and iterations), and Polar Unite, alone or in combination with certain applications (collectively, the "Accused Products"), among other products.

29.     The '678 Patent and '085 Patent generally relate to technology involving a wristwatch with a display which can operate in a plurality of power modes, wherein the wristwatch switches from a first power mode to a second power mode upon the detection of a gesture, tap, or wristturn through the use of an accelerometer and/or other sensors. The technology described in the '678 Patent and '085 Patent was developed by Alex Bezinge, Adrian Mohni, Daniel Pfeifer, and Musa Dogan. For example, the technology is implemented by infringing smartwatches with a digital display and associated software including, but not limited to, the Accused Products, among other products.

30.     The '018 Patent generally relates to technology involving a device for analyzing the biomechanical parameters of the stride of a runner. The technology described in the '018 Patent was developed by Patrick Flaction, Jacques Quievre, and Jean-Benoit Morin. For example, the technology is implemented by infringing devices with a power source, accelerometer, chronograph, and digital processor for measuring parameters associated with a runner's stride including, but not limited to, the Accused Products, among other products.

31.     The '134 Patent generally relates to technology involving an athletic performance monitoring device with an accelerometer wirelessly connected to a user-worn device with a processing system to provide athletic performance information. The technology described in the

'134 Patent was developed by Patrick Flaction. For example, the technology is implemented by infringing smartwatches with a digital display and wearables including, but not limited to, the Accused Products, among other products.

32.    Polar has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products including, but not limited to, smart watches with electronic displays and associated software. Polar's direct infringement further includes practicing all the steps of the Patents-in-Suit by, for example, conducting internal testing, quality assurance, research and development, troubleshooting, demonstration, and other use of the Accused Products in the U.S. *See, e.g.*, *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1366 (Fed. Cir. 2001) (noting that "testing is a use of the invention that may infringe under § 271(a)"); *see also Longhorn Auto. Grp., LLC v. Mitsubishi Motors Corp.*, No. 2:24-CV-00685-JRG, 2025 WL 3706950, at *2 (E.D. Tex. Dec. 22, 2025) (holding that allegations of direct infringement through "promotional demonstration, testing, repairs, troubleshooting, and instructional guidance" are sufficient at the pleading stage).

33.    Polar specifically induced infringement and continues to induce infringement of the Patents-in-Suit by advertising on its website and making available on its website, and at other locations, instructional materials on how to operate the Accused Products in an infringing manner.[8] *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1335 (Fed. Cir.

---

[8]    *See, e.g.*, https://www.polar.com/us-en/; https://www.polar.com/us-en/all-watches; https://support.polar.com/en/manual/; https://www.polar.com/en/guides; https://support.polar.com/e_manuals/ignite-2/polar-ignite-2-user-manual-english/manual.pdf; https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/manual.pdf; https://support.polar.com/e_manuals/pacer-pro/polar-pacer-pro-user-manual-english/manual.pdf

2016) ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement [e.g., advertisements, user manuals] directed to a class of direct infringers [e.g., customers, end users] without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material."). Polar took active steps to induce infringement through the advertisement of its products and distribution of instructional materials. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) ("[I]t may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

## COUNT I
### (Infringement of the '678 Patent)

34.    Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

35.    Slyde has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '678 Patent.

36.    Defendant has and continues to directly infringe the '678 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '678 Patent. Such products include smartwatches with gesture detection for switching power modes including, but not limited to, the Polar Vantage V3, among other products.

37.    For example, Defendant has and continues to directly infringe at least Claim 1 of the '678 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smartwatches with gesture detection for switching power modes, such as the Polar Vantage V3, among other products. The Polar Vantage V3 is exemplary of the infringement of each of the Accused Products.

13

38.    The Polar Vantage V3 performs a method combining gesture detection by an inertial sensor and gesture detection with a touch panel for switching a wristwatch from a first power mode to a second power mode, wherein the inertial sensor comprises an accelerometer and a processor and/or other processing means, and wherein the wristwatch comprises a microcontroller controlling a display of indication on a digital matrix display of the wristwatch and a touch controller for interpreting touch signal provided by a touch panel underneath a cover glass and for converting said signals into command signal. For example, the Polar Vantage V3 detects gestures (e.g., a tap or rotation of the screen) through the use of the inertial sensor (e.g., one or more accelerometers and/or gyroscopes and associated processing elements). When the wearer performs a gesture (e.g., a tap or rotation of the screen), the Polar Vantage V3 switches from a first power mode (e.g., screen off or dim) to a second power mode (e.g., screen display on or bright). The Polar Vantage V3 comprises an accelerometer and a processor (e.g., accelerometer and/or gyroscopes and a processor). The Polar Vantage V3 also includes a display and a touch controller provided by a touch panel. As a further example, on information and belief, the Polar Vantage V3's processor includes one or more controllers for the touch panel.[9]

39.    The Polar Vantage V3 performs a step of using the accelerometer of the inertial sensor for generating an acceleration signal used for detecting a gesture on the cover glass of said wristwatch, while the microcontroller and the touch controller are in a sleep power mode. For example, the Polar Vantage V3 uses the accelerometer to generate an acceleration signal to detect a gesture (e.g., a movement or rotation of the wrist). When the wearer rotates the Polar Vantage V3, it transitions from a first power mode or sleep mode (e.g., screen off or dim) to a second power

---

[9] *See* https://manuals.plus/polar/polar-m600-manual-pdf at pgs. 28, 29, 30, 62, and 89.

mode (e.g., screen on mode or bright mode).[10]

40.     The Polar Vantage V3 performs a step of using the processor and/or other processing means of the inertial sensor for discriminating between gesture and no gesture based on a direction of said acceleration signal and on a slope or frequency of said acceleration signal as measured by said accelerometer being a three dimensional accelerometer, in response to a detection of a gesture by said inertial sensor waking up the touch controller. For example, on information and belief, the Polar Vantage V3 watch uses a processor (e.g., the Polar Vantage V3's processor) working with an inertial sensor (e.g., accelerometer and/or gyroscope) to discriminate between a gesture (e.g., tap, wrist movement, or turn) and no gesture (e.g., no tap, no turn, or no wrist movement) based on the direction of the acceleration signal.[11] The acceleration signal is measured in three dimensions (e.g., along the x, y, and z axes) using the accelerometer.[12] By way of further example, the Polar Vantage V3's accelerometer detects a gesture (e.g., a tap, wrist movement, or turn) to wake up the touch controller display.

41.     The Polar Vantage V3 performs a step of using the touch controller for detecting a tap gesture on the cover glass with the touch panel. For example, the Polar Vantage V3's touch controller detects a tap gesture (e.g., a user touching the touchscreen).[13]

42.     The Polar Vantage V3 performs a step of waking up the microcontroller in said wristwatch upon detection of a tap gesture by said touch controller. For example, on information and belief, when the Polar Vantage V3's touch controller detects a tap gesture, the microcontroller (e.g., Polar Vantage V3's processor) wakes up either by activating one or more processing cores

---

[10] *See id.* at pgs. 28, 29, 30, 62, 89.
[11] *See id.* at pgs. 30, 62, and 89.
[12] *See* http://www.accelerometry.eu/how-do-3d-accelerometer-sensors-work-and-in-what-scientific-areas-are-they-used-for-physical-activity/
[13] *See* https://manuals.plus/polar/polar-m600-manual-pdf at pgs. 28-30.

or changing a power mode or processing speed of one or more processing cores.[14]

43.     The Polar Vantage V3 performs a step of using said microcontroller for detecting said gesture and for discriminating between gesture and no gesture based at least on signals from the touch panel. For example, on information and belief, the Polar Vantage V3's microcontroller (e.g., at least a portion of the Polar Vantage V3's processor or other chipset) detects gestures (e.g., a screen tap or turn), as well as determining whether there was a gesture or whether there was no gesture (e.g., an inadvertent screen tap or inadvertent screen turn) based at least, in part, on signals from the touch panel.[15]

44.     Defendant has directly infringed and continues to directly infringe at least the method claims of the '678 Patent by, among other things, its use, testing, and demonstration of the Accused Products in the United States, as set forth above. *See* ¶¶ 2-8.

45.     Defendant has and continues to indirectly infringe one or more claims of the '678 Patent by knowingly and intentionally inducing others, including Polar's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as smartwatches with gesture detection for switching power modes.

46.     Defendant, with knowledge that these products, or the use thereof, infringe the '678 Patent at least as of the date of this Complaint,[16] knowingly and intentionally induced, and

---

[14] *See id.* at pgs. 28-30, 62, and 89.

[15] *See ibid.*

[16] On information and belief, Defendant gained knowledge of the Patents-in-Suit upon the filing of complaints asserting infringement of the Patents-in-Suit against its largest competitors in the United States and Global markets, including in *Slyde Analytics LLC v. Samsung Elecs. Co.*, Case No. 2:23-cv-00083-RWS (E.D. Tex.) (filed on Feb 28, 2023); *Slyde Analytics LLC v. Zepp Health Corp.*, Case No. 2:23-cv-00172-RWS (E.D. Tex) (filed April 14, 2023); *Slyde Analytics LLC v. Garmin Ltd.*, Case No. 2:23-cv-00215-RWS (E.D. Tex.) (filed March 27, 2024); *Slyde Analytics LLC v. Apple Inc.*, Case No. 2:24-cv-00331-RWS (E.D. Tex.) (filed May 6, 2024). Defendant also

---

continues to knowingly and intentionally induce, direct infringement of the '678 Patent by providing these products to end-users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the '678 Patent at least as early as the issuance of the '678 Patent.

47.     Defendant has induced infringement by others, including end-users, with the specific intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '678 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications.[17] For example, the User Manual for the Polar Vantage V3 instructs user on how to use the power saving feature based on a gesture in an infringing manner. On information and belief,

---

gained knowledge of the Patents-in-Suit through various industry publications. *See, e.g.,* https://www.bizjournals.com/kansascity/news/2024/04/05/garmin-smartwatches-patent-infringement-slyde.html;   https://news.bloomberglaw.com/ip-law/samsung-denied-review-of-smartwatch-patent-after-director-order;   https://ipwatchdog.com/2024/04/18/patent-filings-roundup-slow-week-ptab-district-court-ideahub-subsidiary-challenges-instituted-patent-armory-continues-offensive/.  This Court has previously held that corporations likely monitor the legal affairs of their competitors, which is sufficient to establish pre-suit knowledge of patents. *See NorthStar Sys. LLC v. Volkswagen AG*, Case No. 2:22-cv-00486-JRG, Dkt. No. 71, 7 (E.D. Tex. Aug. 5, 2023) ("The Court finds that it is plausible that BMW had knowledge of the Patents-in-Suit via industry publication. It is highly likely that a large corporation, like BMW, would keep abreast of its competitor's legal affairs, including whether or not they were sued for patent infringement.").

[17]     *See*     https://support.polar.com/e_manuals/vantage-v3/polar-vantage-v3-user-manual-english/manual.pdf;     *see     also*     https://support.polar.com/en/manual/; https://www.polar.com/en/guides

the Defendant's User Manuals and other instructional materials are prepared by or under the direction of Defendant to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, these instructional materials are prepared by Defendant.

Manufactured by Polar Electro Oy, Professorintie 5, 90440 KEMPELE, Finland www.polar.com.

Polar Electro Oy is a ISO 9001:2015 certified company.

© 2025 Polar Electro Oy, 90440 KEMPELE, Finland. All rights reserved. No part of this manual may be used or reproduced in any form or by any means without prior written permission of Polar Electro Oy. 18

48.     Slyde has suffered damages as a result of Defendant's direct and indirect infringement of the '678 Patent in an amount to be proven at trial.

49.     Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '678 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '085 Patent)

50.     Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

51.     Slyde has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '085 Patent.

52.     Defendant has and continues to directly infringe the '085 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '085 Patent.  Such products include smartwatches which detect orientation and switch power modes including, but not limited to, the Polar Ignite 2,

---

[18]        https://support.polar.com/e_manuals/vantage-v3/polar-vantage-v3-user-manual-english/manual.pdf

18

among other products.

53.    For example, Defendant has and continues to directly infringe at least Claim 1 of the '085 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smartwatches which detect orientation and switch power modes, such as the Polar Ignite 2, among other products. The Polar Ignite 2 is exemplary of the infringement of each of the Accused Products.

54.    The Polar Ignite 2 performs a method for switching a wristwatch from a first power mode to a second power mode. For example, the Polar Ignite 2 is a wristwatch. By way of further example, the Polar Ignite 2 is a wristwatch that switches from a first power mode (e.g., screen off) to a second power mode (e.g., screen on) when the user raises the wrist from a first position to a second position on which the Polar Ignite 2 is worn.[19]

55.    The Polar Ignite 2 performs a step of using an accelerometer for detecting a wristturn. For example, the Polar Ignite 2 includes an accelerometer[20], which is used to detect changes in the watch's orientation, including a wristturn.[21]

56.    The Polar Ignite 2 performs a step of switching said wristwatch from said first power mode to said second power mode when a wristturn has been detected. For example, the Polar Ignite 2 default wake-up setting is gesture based, requiring you to perform a wristturn to switch the watch from a first power mode (e.g., screen off) to a second power mode (e.g., screen on).[22]

---

[19] *See* https://support.polar.com/e_manuals/ignite-2/polar-ignite-2-user-manual-english/manual.pdf at pgs. 1, 7, 11 and 17.
[20] *See* https://www.polar.com/us-en/ignite2
[21] *See* https://support.polar.com/e_manuals/ignite-2/polar-ignite-2-user-manual-english/manual.pdf at pgs. 68; *see also* https://www.youtube.com/watch?v=Ci9nB8MCchM at 0:16.
[22] *See ibid.*

57.    The Polar Ignite 2 performs a step of switching said wristwatch from said first power mode to said second power mode when a wristturn has been detected, wherein said step of detecting a wristturn comprises: detecting that an orientation of the wristwatch is in a starting position, wherein said step of detecting that the orientation is in the starting position comprises detecting that the orientation of the wristwatch is held within a first range for a defined time. For example, the Polar Ignite 2 comprises an accelerometer.[23] The accelerometer is used to detect changes in the watch's orientation. By way of further example, the watch starts in a first power mode when is in a certain orientation, such as when the wearer has their arm down at their side. When the wearer performs a wristturn by raising and rotating their wrist to view the watch's face, the accelerometer detects that change in orientation and turns the display on. By way of further example, the change in orientation is maintained for a defined period of time before the watch with change from a first power mode to a second power mode.[24]

58.    The Polar Ignite 2 performs a step of switching said wristwatch from said first power mode to said second power mode when a wristturn has been detected, wherein said step of detecting a wristturn comprises: detecting that an orientation of the wristwatch is then in a final position, wherein said step of detecting that the orientation is in the final position comprises detecting that the orientation is in a second range different from said first range. For example, the Polar Ignite 2 accelerometer detects a change in orientation from a first position to a final position. By way of further example, the watch's accelerometer detects a change in orientation from the first range to a second range.

---

[23] *See* https://www.polar.com/us-en/ignite2
[24] *See* https://support.polar.com/e_manuals/ignite-2/polar-ignite-2-user-manual-english/manual.pdf at pg. 68; *see also* https://www.youtube.com/watch?v=Ci9nB8MCchM at 0:16.

59.     The Polar Ignite 2 performs a step of switching said wristwatch from said first power mode to said second power mode when a wristturn has been detected, wherein said step of detecting a wristturn comprises: in response to a detection that the orientation of the wristwatch is in the second range, detecting that the wristwatch remains substantially immobile during a predetermined duration and that a duration between the starting position and the final position is in a predefined range. For example, when the Polar Ignite 2 detects a change in orientation such that the watch is in a second range, the Polar Ignite 2 also detects that it is substantially immobile in the second range. By way of further example, the Polar Ignite 2 detects that the watch changed from a starting position to a final position, and that the change in orientation lasted for a pre-determined amount of time, and that the final position is within a certain, predetermined range.[25]

60.     Defendant has directly infringed and continues to directly infringe at least the method claims of the '085 Patent by, among other things, its use, testing, and demonstration of the Accused Products in the United States, as set forth above. *See* ¶¶ 2-8.

61.     Defendant has and continues to indirectly infringe one or more claims of the '085 Patent by knowingly and intentionally inducing others, including Polar customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as smartwatches with gesture detection for switching power modes.

62.     Defendant, with knowledge that these products, or the use thereof, infringes the '085 Patent at least as of the date of this Complaint,[26] knowingly and intentionally induced, and

---

[25] *See* https://support.polar.com/e_manuals/ignite-2/polar-ignite-2-user-manual-english/manual.pdf at pg. 68; *see also* https://www.youtube.com/watch?v=Ci9nB8MCchM  from 0:14 to 0:16.

[26] On information and belief, Defendant gained knowledge of the Patents-in-Suit upon the filing of complaints asserting infringement of the Patents-in-Suit against its largest competitors in the

continues to knowingly and intentionally induce, direct infringement of the '085 Patent by providing these products to end-users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the '085 Patent at least as early as the issuance of the '085 Patent.

63.   Defendant has induced infringement by others, including end-users, with the specific intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '085 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other

United States and Global markets, including in *Slyde Analytics LLC v. Samsung Elecs. Co.*, Case No. 2:23-cv-00083-RWS (E.D. Tex.) (filed on Feb 28, 2023); *Slyde Analytics LLC v. Zepp Health Corp.*, Case No. 2:23-cv-00172-RWS (E.D. Tex) (filed April 14, 2023); *Slyde Analytics LLC v. Garmin Ltd.*, Case No. 2:23-cv-00215-RWS (E.D. Tex.) (filed March 27, 2024); *Slyde Analytics LLC v. Apple Inc.*, Case No. 2:24-cv-00331-RWS (E.D. Tex.) (filed May 6, 2024). Defendant also gained knowledge the Patents-in-Suit through various industry publications. *See, e.g.,* https://www.bizjournals.com/kansascity/news/2024/04/05/garmin-smartwatches-patent-infringement-slyde.html; https://news.bloomberglaw.com/ip-law/samsung-denied-review-of-smartwatch-patent-after-director-order; https://ipwatchdog.com/2024/04/18/patent-filings-roundup-slow-week-ptab-district-court-ideahub-subsidiary-challenges-instituted-patent-armory-continues-offensive/.  This Court has previously held that corporations likely monitor the legal affairs of their competitors, which is sufficient to establish pre-suit knowledge of patents. *See NorthStar Sys. LLC v. Volkswagen AG*, Case No. 2:22-cv-00486-JRG, Dkt. No. 71, 7 (E.D. Tex. Aug. 5, 2023) ("The Court finds that it is plausible that BMW had knowledge of the Patents-in-Suit via industry publication. It is highly likely that a large corporation, like BMW, would keep abreast of its competitor's legal affairs, including whether or not they were sued for patent infringement.").

publications.[27] For example, the User Manual for the Polar Ignite 2 instructs user on the power saving feature based on a gesture in an infringing manner. On information and belief, the Defendant's User Manuals and other instructional materials are prepared by or under the direction of Defendant to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, these instructional materials are prepared by Defendant.

Manufactured by Polar Electro Oy, Professorintie 5, 90440 KEMPELE, Finland www.polar.com.

Polar Electro Oy is a ISO 9001:2015 certified company.

© 2022 Polar Electro Oy, 90440 KEMPELE, Finland. All rights reserved. No part of this manual may be used or reproduced in any form or by any means without prior written permission of Polar Electro Oy.[28]

64.     Slyde has suffered damages as a result of Defendant's direct and indirect infringement of the '085 Patent in an amount to be proven at trial.

65.     Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '085 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

### COUNT III
### (Infringement of the '922 Patent)

66.     Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

67.     Slyde has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '922 Patent.

68.     Defendant has and continues to directly infringe the '922 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making,

---

[27]     *See*          https://support.polar.com/e_manuals/ignite-2/polar-ignite-2-user-manual-english/manual.pdf;          *see*          *also*          https://support.polar.com/en/manual/; https://www.polar.com/en/guides

[28]     *See*          https://support.polar.com/e_manuals/ignite-2/polar-ignite-2-user-manual-english/manual.pdf

using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '922 Patent.  Such products include smartwatches with a digital display and touch-sensitive glass which allows for the selection of cards including, but not limited to, the Polar Vantage M3, among other products.

69.    For example, Defendant has and continues to directly infringe at least Claim 9 of the '922 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smartwatches with a digital display and touch-sensitive glass which allows for the selection of cards including, but not limited to, the Polar Vantage M3, among other products. The Polar Vantage M3 is exemplary of the infringement of each of the Accused Products.

70.    The Polar Vantage M3 performs a method for replacing an initially displayed card displayed by a wristwatch by a replacement card. For example, the Polar Vantage M3 is a wristwatch. By way of further example, the Polar Vantage M3 is a wristwatch that replaces the initially displayed card (e.g., the current watch face) with a replacement card (e.g., a different or new watch face including widgets, etc.).[29]

71.    The Polar Vantage M3 performs a step of detecting a direction of a movement of at least one finger at any place and along at least two different directions on a two-dimensional touch-sensitive glass. For example, the Polar Vantage M3 detects finger movements in the up-down direction on the touch-sensitive smartwatch display to change watch faces.[30]

72.    The Polar Vantage M3 performs a step of scrolling on a digital matrix display of several available cards so as for said scrolling to stop of itself so as to align an edge of the

---

[29] *See* https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/manual.pdf at pgs. 16, 17, and 33.
[30] https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/manual.pdf at pgs. 33-34.

replacement card with an edge of the matrix display, wherein one card of said several available cards and occupying the entire digital matrix display is replaced after the scrolling, immediately and without further user intervention, by a different card selected between said several available cards and occupying the entire digital matrix display; and wherein the scrolling direction depends only on the direction of said movement so that said replacement card is dependent from the initially displayed card and from the direction of said movement and is independent from the starting point and end point of said movement on said digital matrix display. For example, the Polar Vantage M3 includes a 1.28-inch AMOLED display which is a touchscreen.[31] When the user scrolls up or down on the display to change the watch face (e.g., a control, or widget, displayed on the watch's graphical interface to represent on the entire screen a unit such as the current time, a phase of the moon, a chronograph display etc.), the scrolling continues briefly even after the finger is lifted, and then automatically stops to align the edge of the new face with the edge of the display matrix. The direction of the continued scrolling depends on the direction of the scroll by the user and is continued in that direction without user intervention. This ensures that the replacement face fits perfectly on the display without requiring further user interaction.[32]

73.    The Polar Vantage M3 performs a step of lastingly displaying the replacement card on the whole of said digital matrix display, wherein each card of said several available cards has a distinct fixed or periodically refreshed image, the size of the images corresponding to the size of said digital matrix display. For example, the Polar Vantage M3 display shows the replacement watch face selected by the user on the entire watch display. This face is fixed and distinct, and the display automatically refreshes when there are any updates such as step count, time, battery life,

---

[31] *See* https://www.polar.com/us-en/vantage/m3
[32] *See* https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/manual.pdf at pgs. 16, 17, 33, and 34.

weather, etc.[33]

74.    Defendant has directly infringed and continues to directly infringe at least the method claims of the '922 Patent by, among other things, its use, testing, and demonstration of the Accused Products in the United States, as set forth above. *See* ¶¶ 2-8.

75.    Defendant has and continues to indirectly infringe one or more claims of the '922 Patent by knowingly and intentionally inducing others, including Polar's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as smartwatches with touch displays.

76.    Defendant, with knowledge that these products, or the use thereof, infringe the '922 Patent at least as of the date of this Complaint,[34] knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '922 Patent by

---

[33] *See id.* at 17.

[34] On information and belief, Defendant gained knowledge of the Patents-in-Suit upon the filing of complaints asserting infringement of the Patents-in-Suit against its largest competitors in the United States and Global markets, including in *Slyde Analytics LLC v. Samsung Elecs. Co.*, Case No. 2:23-cv-00083-RWS (E.D. Tex.) (filed on Feb 28, 2023); *Slyde Analytics LLC v. Zepp Health Corp.*, Case No. 2:23-cv-00172-RWS (E.D. Tex) (filed April 14, 2023); *Slyde Analytics LLC v. Garmin Ltd.*, Case No. 2:23-cv-00215-RWS (E.D. Tex.) (filed March 27, 2024); *Slyde Analytics LLC v. Apple Inc.*, Case No. 2:24-cv-00331-RWS (E.D. Tex.) (filed May 6, 2024). Defendant also gained knowledge of the Patents-in-Suit through various industry publications. *See, e.g.,* https://www.bizjournals.com/kansascity/news/2024/04/05/garmin-smartwatches-patent-infringement-slyde.html;    https://news.bloomberglaw.com/ip-law/samsung-denied-review-of-smartwatch-patent-after-director-order;    https://ipwatchdog.com/2024/04/18/patent-filings-roundup-slow-week-ptab-district-court-ideahub-subsidiary-challenges-instituted-patent-armory-continues-offensive/. This Court has previously held that corporations likely monitor the legal affairs of their competitors, which is sufficient to establish pre-suit knowledge of patents. *See NorthStar Sys. LLC v. Volkswagen AG*, Case No. 2:22-cv-00486-JRG, Dkt. No. 71, 7 (E.D. Tex. Aug. 5, 2023) ("The Court finds that it is plausible that BMW had knowledge of the Patents-in-Suit via industry publication. It is highly likely that a large corporation, like BMW, would keep abreast of its competitor's legal affairs, including whether or not they were sued for patent infringement.").

providing these products to end-users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the '922 Patent at least as early as the issuance of the '922 Patent.

77.     Defendant has induced infringement by others, including end-users, with the specific intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '922 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications.[35] For example, the User Manual for the Polar Vantage M3 instructs users to use the display screen in an infringing manner. On information and belief, the Defendant's User Manuals and other instructional materials are prepared by or under the direction of Defendant to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, these instructional materials are prepared by Defendant.

Manufactured by Polar Electro Oy, Professorintie 5, 90440 KEMPELE, Finland www.polar.com.

Polar Electro Oy is a ISO 9001:2015 certified company.

© 2025 Polar Electro Oy, 90440 KEMPELE, Finland. All rights reserved. No part of this manual may be used or reproduced in any form or by any means without prior written permission of Polar Electro Oy. [36]

---

[35]     *See*     https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/manual.pdf;     *see*     *also*     https://support.polar.com/en/manual/; https://www.polar.com/en/guides

[36]     *See*     https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/manual.pdf

78.     Slyde has suffered damages as a result of Defendant's direct and indirect infringement of the '922 Patent in an amount to be proven at trial.

79.     Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '922 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT IV
### (Infringement of the '018 Patent)

80.     Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

81.     Slyde has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '018 Patent.

82.     Defendant has and continues to directly infringe the '018 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '018 Patent. Such products include devices for analyzing the biomechanical parameters of a stride of a runner, such as the Polar Pacer Pro, among other products.

83.     For example, Defendant has and continues to directly infringe at least Claim 1 of the '018 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include devices and associated software for analyzing the biomechanical parameters of a stride of a runner, such as the Polar Pacer Pro, among other products. The Polar Pacer Pro is exemplary of the infringement of each of the Accused Products.

84.     The Polar Pacer Pro comprises a device designed for analyzing biomechanical parameters of a stride of a runner, comprising: a self-sufficient electric power source. For example, the Polar Pacer Pro is a wristwatch. The Polar Pacer Pro is a wristwatch that measures the

28

biomechanical parameters used to describe running cadence which is measured with a built-in accelerometer. By way of further example, the Polar Pacer Pro watch includes an electric power source (e.g., a battery).[37]

85.    The Polar Pacer Pro comprises a tri-axial accelerometer capable of supplying at least one sequence of acceleration data in at least a vertical direction whilst the runner travels a distance on a running course a GPS receiver; a chronograph. For example, the Polar Pacer Pro includes a tri-axial accelerometer (e.g., an internal 3D accelerometer sensor) to calculate runner data, a GPS receiver (e.g., GPS for geolocation), and a chronograph (e.g., a Stopwatch/Timer).[38]

86.    The Polar Pacer Pro comprises a digital processor programmed for calculating, during or at the end of the run, biomechanical parameters of the stride of said runner, on the basis of said acceleration data, of a distance measured by said GPS receiver and/or by said accelerometer, and of a duration counted by said chronograph. For example, the Polar Pacer Pro watch includes a CPU to process data received from the accelerometer, GPS, and timer as biomechanical parameters of the stride during running or walking.[39]

87.    The Polar Pacer Pro comprises a digital processor programmed for calculating, during or at the end of the run, biomechanical parameters of the stride of said runner, on the basis of said acceleration data, of a distance measured by said GPS receiver and/or by said accelerometer, and of a duration counted by said chronograph, wherein the biomechanical

---

[37] *See* https://www.polar.com/us-en/pacer-pro; *see also* https://support.polar.com/e_manuals/pacer-pro/polar-pacer-pro-user-manual-english/manual.pdf at pgs. 47 and 49.

[38] *See* https://www.polar.com/us-en/pacer-pro

[39] *See* https://support.polar.com/e_manuals/pacer-pro/polar-pacer-pro-user-manual-english/manual.pdf at pgs. 47, 49, 78, and 113; *see also* https://www.polar.com/blog/what-is-running-cadence/?srsltid=AfmBOoqdnPZaf9XGGeAgldjMkiarqRZp-ZnQ_d85xLoFlblshPI8Axrw.

parameters of the stride comprises a vertical oscillation of a center of gravity of said runner, and include a distance the center of gravity lowers and a distance the center of gravity elevates in a stride, and a sum of the lowering and of the elevation of the center of gravity, and wherein the biomechanical parameters are calculated at each stride. For example, the Polar Pacer Pro watch measures the cadence of the user during the training session. Cadence is defined as the total number of steps the user takes per minute. One easy way to measure your cadence for running is to count the times the user's feet hit the ground in 60 seconds.[40]

88.    The Polar Pacer Pro comprises a digital processor programmed for calculating, during or at the end of the run, biomechanical parameters of the stride of said runner, on the basis of said acceleration data, of a distance measured by said GPS receiver and/or by said accelerometer, and of a duration counted by said chronograph, wherein said digital processor is programmed for determining an anteroposterior direction during the run of the runner. For example, the Polar Pacer Pro watch includes a CPU to determine anteroposterior direction (e.g., forward and backward), using a 3D accelerometer, as three-axis accelerometers measure acceleration along the x-, y-, and z-axes. [41]

89.    The Polar Pacer Pro comprises a digital processor programmed for calculating, during or at the end of the run, biomechanical parameters of the stride of said runner, on the basis

---

[40] *See* https://support.polar.com/en/support/how_to_utilize_running_cadence_in_your_training; *see also* https://support.polar.com/e_manuals/pacer-pro/polar-pacer-pro-user-manual-english/manual.pdf at pgs. 47, 49, and 113; https://www.polar.com/blog/what-is-running-cadence/?srsltid=AfmBOoqdnPZaf9XGGeAgldjMkiarqRZp-ZnQ_d85xLoFlblshPI8Axrw
[41] *See* https://www.polar.com/us-en/pacer-pro; https://support.polar.com/e_manuals/pacer-pro/polar-pacer-pro-user-manual-english/manual.pdf pgs. 49 and 78; https://www.polar.com/blog/what-is-running-cadence/?srsltid=AfmBOoqdnPZaf9XGGeAgldjMkiarqRZp-ZnQ_d85xLoFlblshPI8Axrw; http://www.accelerometry.eu/how-do-3d-accelerometer-sensors-work-and-in-what-scientific-areas-are-they-used-for-physical-activity/; https://www.sciencebuddies.org/science-fair-projects/references/accelerometer

of said acceleration data, of a distance measured by said GPS receiver and/or by said accelerometer, and of a duration counted by said chronograph, wherein a sequence of acceleration data in said anteroposterior direction is measured by said accelerometer during the run and processed separately from said sequence of acceleration data in the vertical direction. For example, the Polar Pacer Pro watch includes an inbuilt 3D accelerometer. It has three sensing structures arranged perpendicular to each other, allowing it to measure movement separately along the X, Y, and Z directions.[42]

90.    The Polar Pacer Pro comprises a digital processor programmed for calculating, during or at the end of the run, biomechanical parameters of the stride of said runner, on the basis of said acceleration data, of a distance measured by said GPS receiver and/or by said accelerometer, and of a duration counted by said chronograph, wherein said digital processor is further programmed for calculating, during or at the end of the run, at least some of the biomechanical parameters of the stride of said runner, also on the basis of said acceleration data in said anteroposterior direction. For example, the Polar Pacer Pro watch includes a CPU to process information received during or after a training session such as running using accelerometer data.[43]

91.    The Polar Pacer Pro comprises a wireless interface for exchange of data with another data processing device. For example, the Polar Pacer Pro watch can be paired with the Polar Flow app to view analyzed data from your training sessions wirelessly from the smartwatch

---

[42] *See* https://support.polar.com/e_manuals/pacer-pro/polar-pacer-pro-user-manual-english/manual.pdf at pgs. 49 and 78; http://www.accelerometry.eu/how-do-3d-accelerometer-sensors-work-and-in-what-scientific-areas-are-they-used-for-physical-activity/; https://www.sciencebuddies.org/science-fair-projects/references/accelerometer

[43] *See* https://www.polar.com/us-en/pacer-pro; https://support.polar.com/e_manuals/pacer-pro/polar-pacer-pro-user-manual-english/manual.pdf at pgs. 47-49, 78, and 98-99.

to the smartphone.[44]

92.     Defendant has directly infringed and continues to directly infringe at least the method claims of the '018 Patent by, among other things, its use, testing, and demonstration of the Accused Products in the United States, as set forth above. *See* ¶¶ 2-8.

93.     Defendant has and continues to indirectly infringe one or more claims of the '018 Patent by knowingly and intentionally inducing others, including Polar customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such devices for analyzing the biomechanical parameters of a stride of a runner, which include a power source, accelerometer, GPS receiver, chronograph, and digital processor programmed to measure parameters associated with a runner's stride.

94.     Defendant, with knowledge that these products, or the use thereof, infringe the '018 Patent at least as of the date of this Complaint,[45] knowingly and intentionally induced, and

---

[44] *See* https://support.polar.com/e_manuals/pacer-pro/polar-pacer-pro-user-manual-english/polar-flow-app.htm; https://support.polar.com/e_manuals/pacer-pro/polar-pacer-pro-user-manual-english/manual.pdf at pgs. 132-133.

[45] On information and belief, Defendant gained knowledge of the Patents-in-Suit upon the filing of complaints asserting infringement of the Patents-in-Suit against its largest competitors in the United States and Global markets, including in *Slyde Analytics LLC v. Samsung Elecs. Co.*, Case No. 2:23-cv-00083-RWS (E.D. Tex.) (filed on Feb 28, 2023); *Slyde Analytics LLC v. Zepp Health Corp.*, Case No. 2:23-cv-00172-RWS (E.D. Tex) (filed April 14, 2023); *Slyde Analytics LLC v. Garmin Ltd.*, Case No. 2:23-cv-00215-RWS (E.D. Tex.) (filed March 27, 2024); *Slyde Analytics LLC v. Apple Inc.*, Case No. 2:24-cv-00331-RWS (E.D. Tex.) (filed May 6, 2024). Defendant also gained knowledge of the Patents-in-Suit through various industry publications. *See, e.g.,* https://www.bizjournals.com/kansascity/news/2024/04/05/garmin-smartwatches-patent-infringement-slyde.html; https://news.bloomberglaw.com/ip-law/samsung-denied-review-of-smartwatch-patent-after-director-order; https://ipwatchdog.com/2024/04/18/patent-filings-roundup-slow-week-ptab-district-court-ideahub-subsidiary-challenges-instituted-patent-armory-continues-offensive/.  This Court has previously held that corporations likely monitor the legal affairs of their competitors, which is sufficient to establish pre-suit knowledge of patents. *See NorthStar Sys. LLC v. Volkswagen AG*, Case No. 2:22-cv-00486-JRG, Dkt. No. 71, 7 (E.D. Tex. Aug. 5, 2023) ("The Court finds that it is plausible that BMW had knowledge of the Patents-in-

continues to knowingly and intentionally induce, direct infringement of the '018 Patent by providing these products to end-users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the '018 Patent at least as early as the issuance of the '018 Patent.

95.     Defendant has induced infringement by others, including end-users, with the specific intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '018 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications.[46] For example, the User Manual for the Polar Pacer Pro instructs users to use the fitness tracking capabilities in an infringing manner. On information and belief, the Defendant's User Manuals and other instructional materials are prepared by or under the direction of Defendant to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, these instructional materials are prepared by Defendant.

---

Suit via industry publication. It is highly likely that a large corporation, like BMW, would keep abreast of its competitor's legal affairs, including whether or not they were sued for patent infringement."). *See also* ¶ 26 regarding Polar's knowledge of the '018 Patent and the '134 Patent.
[46]    *See*          https://support.polar.com/e_manuals/pacer-pro/polar-pacer-pro-user-manual-english/manual.pdf;          *see*          *also*          https://support.polar.com/en/manual/; https://www.polar.com/en/guides.

Manufactured by Polar Electro Oy, Professorintie 5, 90440 KEMPELE, Finland www.polar.com.

Polar Electro Oy is a ISO 9001:2015 certified company.

© 2024 Polar Electro Oy, 90440 KEMPELE, Finland. All rights reserved. No part of this manual may be used or reproduced in any form or by any means without prior written permission of Polar Electro Oy.[47]

96.   Slyde has suffered damages as a result of Defendant's direct and indirect infringement of the '018 Patent in an amount to be proven at trial.

97.   Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '018 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

98.   Defendant has committed and continues to commit acts of infringement that Defendant actually knew or should have known constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '018 Patent. Defendant's direct and indirect infringement of the '018 Patent has been and continues to be willful, intentional, deliberate, and/or in conscious disregard of rights under the patent. Plaintiff is entitled to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## COUNT V
### (Infringement of the '134 Patent)

99.   Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

100.   Slyde has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '134 Patent.

101.   Defendant has and continues to directly infringe the '134 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each

---

[47]   *See*   https://support.polar.com/e_manuals/pacer-pro/polar-pacer-pro-user-manual-english/manual.pdf

34

and every limitation of one or more claims of the '134 Patent. Such products include athletic performance monitoring devices, such as the Polar Vantage M3, among other products.

102.   For example, Defendant has and continues to directly infringe at least Claim 14 of the '134 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include performance monitoring devices with an accelerometer wirelessly connected to a user-worn device with a processing system to provide athletic performance information including, but not limited to, the Polar Vantage M3, among other products. The Polar Vantage M3 is exemplary of the infringement of each of the Accused Products.

103.   The Polar Vantage M3 performs a method for providing athletic performance information. For example, the Polar Vantage M3 watch features 24/7 activity tracking. It uses an internal 3D accelerometer to track user activity and progress towards performance information (e.g., the daily activity goal is shown as a percentage and visualized with a circle that fills up as the user is active). The watch is synced with the Polar Flow app. The performance data is provided on the Polar Flow app.[48]

104.   The Polar Vantage M3 performs a step of measuring the acceleration of an athlete using an accelerometer adapted to be worn by the athlete close to the center of gravity of the athlete, to provide acceleration data. For example, the Polar Vantage M3 watch includes an internal 3D accelerometer that records wrist movements to analyze acceleration data (e.g., the frequency, intensity, and regularity of user's hand movements in relation to the body's center of gravity, together with their physical information).[49]

---

[48] *See* https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/activity-tracking.htm; https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/polar-flow-app.htm

[49] *See* https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/activity-tracking.htm; https://www.polar.com/us-en/vantage/m3

105.     The Polar Vantage M3 performs a step of wirelessly communicating by the accelerometer the acceleration data, relating to the acceleration of the athlete, to a processing system integral in an athlete-worn device being worn by the athlete, wherein the processing system is configured such that, during use, it requests acceleration data from the accelerometer only when a predefined event has occurred. For example, the Polar Vantage M3 wirelessly communicates the training data to the mobile phone with the Polar Flow app. The app requests the data from the watch after training.[50]

106.     The Polar Vantage M3 performs a step of processing by the processing system the acceleration data the processing system receives from the accelerometer, to provide athletic performance information. For example, the Polar Vantage M3 syncs the training data to the Polar Flow app automatically after the user's training session. The performance statistics can be seen on the Polar Flow app.[51]

107.     Defendant has directly infringed and continues to directly infringe at least the method claims of the '134 Patent by, among other things, its use, testing, and demonstration of the Accused Products in the United States, as set forth above. *See* ¶¶ 2-8.

108.     Defendant has and continues to indirectly infringe one or more claims of the '134 Patent by knowingly and intentionally inducing others, including Polar's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering

---

[50] *See* https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/manual.pdf at pgs. 56, 60, 79,178; *see also* https://support.polar.com/en/does-my-ignite-vantage-m-vantage-v-sync-with-the-polar-flow-app-automatically; https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/activity-tracking.htm; https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/speed-and-distance-from-the-wrist.htm

[51] *See* https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/polar-flow-app.htm; https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/activity-tracking.htm

to sell, selling, and/or importing into the United States products that include infringing technology, such as such as performance monitoring devices with an accelerometer wirelessly connected to a user-worn device with a processing system to provide athletic performance information.

109.   Defendant, with knowledge that these products, or the use thereof, infringe the '134 Patent at least as of the date of this Complaint,[52] knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '134 Patent by providing these products to end-users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the '134 Patent at least as early as the issuance of the '134 Patent.

---

[52] On information and belief, Defendant gained knowledge of the Patents-in-Suit upon the filing of complaints asserting infringement of the Patents-in-Suit against its largest competitors in the United States and Global markets, including in *Slyde Analytics LLC v. Samsung Elecs. Co.*, Case No. 2:23-cv-00083-RWS (E.D. Tex.) (filed on Feb 28, 2023); *Slyde Analytics LLC v. Zepp Health Corp.*, Case No. 2:23-cv-00172-RWS (E.D. Tex) (filed April 14, 2023); *Slyde Analytics LLC v. Garmin Ltd.*, Case No. 2:23-cv-00215-RWS (E.D. Tex.) (filed March 27, 2024); *Slyde Analytics LLC v. Apple Inc.*, Case No. 2:24-cv-00331-RWS (E.D. Tex.) (filed May 6, 2024). Defendant also gained knowledge of the Patents-in-Suit through various industry publications. *See, e.g.,* https://www.bizjournals.com/kansascity/news/2024/04/05/garmin-smartwatches-patent-infringement-slyde.html;       https://news.bloomberglaw.com/ip-law/samsung-denied-review-of-smartwatch-patent-after-director-order;       https://ipwatchdog.com/2024/04/18/patent-filings-roundup-slow-week-ptab-district-court-ideahub-subsidiary-challenges-instituted-patent-armory-continues-offensive/.   This Court has previously held that corporations likely monitor the legal affairs of their competitors, which is sufficient to establish pre-suit knowledge of patents. *See NorthStar Sys. LLC v. Volkswagen AG*, Case No. 2:22-cv-00486-JRG, Dkt. No. 71, 7 (E.D. Tex. Aug. 5, 2023) ("The Court finds that it is plausible that BMW had knowledge of the Patents-in-Suit via industry publication. It is highly likely that a large corporation, like BMW, would keep abreast of its competitor's legal affairs, including whether or not they were sued for patent infringement."). Moreover, Defendant cited to the '134 Patent family in connection with its own WIPO Patent Application: WO2014135187A1 filed on March 4, 2013. *See* https://patents.google.com/patent/US9536134B2/en?oq=9%2c536%2c134#citedBy. *See also* ¶ 26 regarding Polar's knowledge of the '018 Patent and the '134 Patent.

110.    Defendant has induced infringement by others, including end-users, with the specific intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '134 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications.[53] For example, the User Manual for the Polar Vantage M3 instructs users to use the fitness tracking capabilities in an infringing manner. On information and belief, the Defendant's User Manuals and other instructional materials are prepared by or under the direction of Defendant to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, these instructional materials are prepared by Defendant.

> Manufactured by Polar Electro Oy, Professorintie 5, 90440 KEMPELE, Finland www.polar.com.
>
> Polar Electro Oy is a ISO 9001:2015 certified company.
>
> © 2025 Polar Electro Oy, 90440 KEMPELE, Finland. All rights reserved. No part of this manual may be used or reproduced in any form or by any means without prior written permission of Polar Electro Oy. [54]

111.    Slyde has suffered damages as a result of Defendant's direct and indirect infringement of the '134 Patent in an amount to be proven at trial.

112.    Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '134 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

---

[53]    *See*    https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/manual.pdf;    *see    also*    https://support.polar.com/en/manual/; https://www.polar.com/en/guides

[54]    *See*    https://support.polar.com/e_manuals/vantage-m3/polar-vantage-m3-user-manual-english/manual.pdf

113.    Defendant has committed and continues to commit acts of infringement that Defendant actually knew or should have known constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '134 Patent. Defendant's direct and indirect infringement of the '134 Patent has been and continues to be willful, intentional, deliberate, and/or in conscious disregard of rights under the patent. Plaintiff is entitled to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Slyde prays for relief against Defendant as follows:

a.    Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.    Entry of judgment declaring that Defendant's infringement of the '134 Patent and the '018 Patent has been willful and deliberate;

c.    An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

d.    An order awarding damages sufficient to compensate Slyde for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

e.    An order awarding Plaintiff treble damages under 35 U.S.C. § 284 as a result of Defendant's willful and deliberate infringement of the '134 Patent and the '018 Patent;

f.    Entry of judgment declaring that this case is exceptional and awarding Slyde its

costs and reasonable attorney fees under 35 U.S.C. § 285; and

g.    Such other and further relief as the Court deems just and proper.

Dated: May 19, 2026                              Respectfully submitted,

                                                 */s/ Vincent J. Rubino, III*
                                                 Alfred R. Fabricant
                                                 NY Bar No. 2219392
                                                 Email: ffabricant@frlip.com
                                                 Peter Lambrianakos
                                                 NY Bar No. 2894392
                                                 Email: plambrianakos@frlip.com
                                                 Vincent J. Rubino, III
                                                 NY Bar No. 4557435
                                                 Email: vrubino@frlip.com
                                                 **Fabricant, Rubino & Lambrianakos LLP**
                                                 411 Theodore Fremd Avenue
                                                 Suite 206 South
                                                 Rye, New York 10580
                                                 Telephone: (212) 257-5797
                                                 Facsimile: (212) 257-5796

                                                 John Andrew Rubino
                                                 NY Bar No. 5020797
                                                 Email: jarubino@rubinoip.com
                                                 Michael Mondelli III
                                                 NY Bar No. 5805114
                                                 Email: mmondelli@rubinoip.com
                                                 **RUBINO IP**
                                                 1200 Harbor Blvd., 10th Floor
                                                 Weehawken Township, NJ 07086
                                                 Telephone: (201) 341-9445
                                                 Facsimile: (973) 535-0921

                                                 ***ATTORNEYS FOR PLAINTIFF,***
                                                 ***SLYDE ANALYTICS LLC***